UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FELIPE ARROYO,<br><br>      Petitioner,<br><br>  v.<br><br>STEWART ECKERT,<br>SUPERINTENDENT, WENDE<br>CORRECTIONAL FACILITY,<br><br>      Respondent. | Case No. 18-cv-5819 (PGG) (JLC) |

PETITIONER'S RESPONSE TO RESPONDENT'S
OBJECTIONS TO THE REPORT & RECOMMENDATION (DKT. 34)

Christina Swarns
Anastasia B. Heeger (AH-9640)
OFFICE OF THE APPELLATE
DEFENDER
11 Park Place, Suite 1601
New York, NY 10007
(212) 402-4100

Evan H. Stein (ES-2139)
HOLWELL SHUSTER &
GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
estein@hsgllp.com

*Attorneys for Petitioner*

## I. INTRODUCTION

On May 28, 2020, Magistrate Judge James L. Cott issued a Report and Recommendation on Petitioner Felipe Arroyo's Petition for a writ of habeas corpus. Dkt. 28 (the "R&R"). Petitioner filed objections to the R&R on July 2, 2020, which objections set forth the relevant facts underlying the Petition, as well as Judge Cott's rulings in the R&R. Dkt. 33. To avoid unnecessary repetition, Petitioner will not repeat that background, but incorporates it by reference herein.

Respondent, the Bronx DA, also objects to the R&R, and specifically its findings that (1) "Morrissey's testimony about Bergen County was false, ADA Aaron Kaplan should have known it was false, and the false testimony went uncorrected," (R&R at 40); and (2) the Bronx DA's pretrial communications with other jurisdictions were not disclosed and were favorable under *Brady*, (R&R at 33–37). *See* Dkt. 34 ("Resp. Obj.").

For the reasons explained in Petitioner's briefs before Judge Cott, (Dkts. 3, 21), and in his objections, those findings were correct and should be adopted by the Court. Below, Petitioner responds to the specific points raised in Respondent's objection.

## II. THE BRONX DA SHOULD HAVE CORRECTED MORRISSEY'S FALSE TESTIMONY

Judge Cott's finding that Morrissey lied on the stand was undoubtedly correct. The record of the state court proceedings establishes unequivocally that Morrissey told a falsehood on the stand concerning the Bronx DA's promises to assist him in New Jersey after Petitioner's trial. As the R&R recognized, the written agreement between Morrissey and the Bronx DA required the DA to "report the nature and extent of [Morrissey's] cooperation to other law enforcement or judicial authorities as requested." R&R at 39, 40–41 & n.16. The "plain language" of the agreement thus *required* the DA to contact New Jersey (and any other

1

jurisdiction where Morrissey faced criminal charges) to, at the very least, report his cooperation after Petitioner's trial. *Id.* But when asked if there was any relationship between his testimony and his charges in New Jersey, Morrissey said "none whatsoever." R&R at 39–40. Morrissey's words simply cannot be squared with the language of the signed cooperation agreement.

Judge Cott's finding that ADA Kaplan knew (or at least should have known) of Morrissey's lie is likewise clearly correct. ADA Kaplan *drafted* and signed the cooperation agreement that Morrissey lied about on the stand. Of course he knew that he would be obligated to call New Jersey after Petitioner's trial. That's why, after Morrissey testified against Petitioner, Morrissey's attorney Norman Trabulus emailed Kaplan to *remind* him of his obligation to call Bergen County, New Jersey. (A-217; Ex. 6 at 165 (Dkt. 1-29)). Indeed, Kaplan had communicated with the Bergen County prosecutors before Petitioner's trial to verify the existence of Morrissey's charges. (Ex. 6 at 57 (Dkt. 1-28)). In response to Mr. Trabulus's reminder, Kaplan promised to notify Bergen County of Morrissey's cooperation in Petitioner's case, which he ended up doing. (A-217; A-372 to A-373; Ex. 6 at 58–62). Nonetheless, he allowed Morrissey to minimize the DA's promised post-trial actions in New Jersey in order to bolster Morrissey's testimony on re-direct.

In nevertheless objecting to these findings, Respondent seeks to make complicated what is, as shown above, quite simple.

A. **<u>Respondent's contortions cannot make Morrissey's lie true.</u>**

Respondent argues that the state court found no lies were told on the stand, and that the state court's findings are due deference under AEDPA. However, where a state court's findings are "based on an unreasonable determination of the facts," no AEDPA deference is warranted. 28 U.S.C. § 2254(d)(2). Petitioner respectfully submits that even the short discussion above is

sufficient to demonstrate the unreasonableness of the state court's factual finding (but for a longer discussion of why the state court's finding is erroneous, see Opening Br. at 45–46; Reply Br. at 20–23).

Respondent makes several strained arguments intended to show that Morrissey's lie was actually true. None of them is sound.

First, Respondent reorders Morrissey's testimony in an apparent effort to make his false testimony appear truthful. But even that attempt fails. Respondent concludes: "Combining ADA Kaplan's question and Morrissey's reply, the challenged testimony is as follows: 'I have [none whatsoever] idea whether or not what [I] do in this courtroom has any relationship with Bergen County.'" Resp. Obj. at 3. But even that (reformulated) answer is a lie, and an obvious one. There *was* at least *some* relationship between Morrissey's testimony and Bergen County. Namely, after his testimony, Bergen County would *receive a call from the Bronx DA*, as the written cooperation agreement required. Dkt. 21 at 20–22. Failing to disclose that relationship violated *Napue*.

Second, Respondent argues that Morrissey's answer was "ambiguous." Resp. Obj. at 2, 4. Even accepting Respondent's strained alternative readings, *all* of the proffered interpretations are equally false. Reply Br. at 20–22. In other words, *no matter how one interprets Morrissey's answer*, it was a lie. This argument cannot rescue Respondent from the R&R's correct findings.

Third, Respondent points to testimony in the state post-conviction proceedings by Morrissey's attorney to the effect that Morrissey had not been promised anything by the Bronx DA with respect to New Jersey. Resp. Obj. at 5. But it does not matter what Morrissey's attorney recalled about the signed cooperation agreement between Morrissey and the Bronx DA. The *plain language* of that agreement required the DA to call New Jersey after Morrissey

3

testified at Petitioner's trial; no "good faith" was required on Morrissey's part. Resp. Obj. at 5. It also does not matter whether Morrissey and the DA had had lengthy discussions about Bergen County prior to Petitioner's trial. Resp. Obj. at 5 n.2. The fact remains that Morrissey faced charges in Bergen County and the DA was obligated to call any such jurisdiction after Morrissey testified. Morrissey's affirmative representation that no actions would be taken on his behalf with the New Jersey case was false.

Fourth, the DA suggests that Morrissey may have *forgotten* what the cooperation agreement required the DA to do because it had been signed two months earlier. Resp. Obj. at 6. There is no basis for this suggestion. The state court did not find that Morrissey forgot anything and there is no evidence that he did. Morrissey, a repeat jailhouse informant who had worked tirelessly to get his deal with the Bronx DA, had likely memorized every word in the agreement.[1] Moreover, the cooperation agreement was one of the few disclosures the Bronx DA actually made, and it is not credible that the DA would not have thoroughly prepared its star witness on important cross material it had disclosed to the defense. Indeed, the existence of the cooperation agreement was elicited by the Bronx DA as part of Morrissey's direct examination, during which it was described in some detail. Trial Tr. at 476–79. Given that it lacks any basis in the record, it is unsurprising that the DA never made this argument before Judge Cott (which provides an independent ground to reject it now. *See Razzoli v. Fed. Bureau of Prisons*, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.")). But even taking this argument at face value, situations like that (a

---

[1] If the Bronx DA believes Morrissey likely could not remember the substance of his written agreement after eight *weeks*, why did it believe that he could accurately recall for the jury the details of an alleged conversation with Petitioner after eight *months*?

4

witness's momentary lapse in memory) are *precisely* why *Napue* requires *prosecutors*—who will "recall" the promises they made eight weeks earlier—to <u>correct</u> their witness's false testimony.

Finally, Respondent objects that Morrissey may not have "knowingly" testified falsely. Resp. Obj. at 6. This argument harks back to Respondent's reliance before Judge Cott on cases concerning "grant[ing] a new trial on the ground that a witness committed *perjury*." Dkt. 18 at 45 n.23 (emphasis added). But, as Petitioner argued before Judge Cott, this is not a perjury case. Reply Br. at 23 n.5. That distinction is critical, because under *Napue*, what matters is the *prosecutor's* mental state—knowingly failing to correct false testimony—not the witness's. Respondent cites no case requiring that a *Napue* claimant prove that witness told a "knowing" lie or that the witness committed something akin to criminal perjury. Indeed, courts have rejected precisely this argument:

> The State contends that there was no *Napue* violation because James did not commit perjury. According to the State, *Napue* renders unconstitutional only acts of perjury. Therefore, the State reasons, because James was ignorant of the deal, he did not commit perjury and the State did not run afoul of *Napue*. In short, the State contends that it is constitutionally permissible for it knowingly to present false evidence to a jury in order to obtain a conviction, as long as the witness used to transmit the false information is kept unaware of the truth.
>
> The State is wrong. *Napue*, by its terms, addresses the presentation of false *evidence*, not just subornation of perjury. . . . There is nothing in *Napue*, its predecessors, or its progeny, to suggest that the Constitution protects defendants only against the knowing use of perjured testimony.

*Hayes v. Brown*, 399 F.3d 972, 980–81 (9th Cir. 2005). Respondent's argument, worryingly, appears to disclaim its constitutional duties to correct *all* "false evidence," not just testimony that might technically qualify as perjury and should be rejected.

### B. As the author of the agreement Morrissey lied about, ADA Kaplan surely "knew" that his testimony was false.

ADA Kaplan, who wrote the agreement, knew perfectly well what he had promised Morrissey, as Judge Cott correctly found. R&R at 40–41. Respondent's objections focus on the lack of any "conversations about Bergen County" between Morrissey and the Bronx DA as being dispositive. Resp. Obj. at 7. But, again, that is irrelevant. The written agreement, as discussed above, requires in plain terms that the Bronx DA call any jurisdiction where Morrissey faced charges. And the Bronx DA knew by the time of Morrissey's false testimony that Morrissey faced charges in Bergen County *because Morrissey had just said so in open court*. Nothing more was required for ADA Kaplan to correct Morrissey's false testimony.

Respondent's objections should be rejected as to Petitioner's *Napue* claim.[2]

### III. RESPONDENT'S PRETRIAL COMMUNICATIONS WITH OTHER JURISDICTIONS WERE NOT DISCLOSED AND WERE FAVORABLE.

Judge Cott found in the R&R that the Bronx DA failed to disclose that it had agreed to make calls to jurisdictions other than Kings County on Morrissey's behalf as an inducement for his testimony, and that it actually did call Queens County at Morrissey's request prior to trial. R&R at 31–34. Judge Cott also found that this undisclosed evidence was favorable. *Id.* at 34–37. Both findings are correct. Opening Br. at 30–39; Reply Br. at 1–13.

The Bronx DA concedes that its pre-trial "emails and phone calls" to Queens County "were not disclosed." Resp. Obj. at 8. Yet it argues, in effect, that Petitioner should have figured out that these *pre-trial* communications *with Queens* had actually taken place (and thus

---

[2] The Bronx DA also argues that Judge Cott correctly found that, despite ADA Kaplan's knowledge of the falsity of Morrissey's testimony, he was under no duty to correct it, and that in any event the failure to correct Morrissey's lies did not prejudice Petitioner. Petitioner addresses these findings at length in his own objections to the R&R, and he will not repeat those arguments here. *See* Dkt. 33 at 25–29.

6

that they were impliedly disclosed) because Morrissey's written cooperation agreement required the DA to call other jurisdictions only *after* Petitioner's trial. Petitioner has responded to this fallacy in prior briefing. *See* Opening Br. at 38–39; Reply Br. at 9–10. At the risk of repetition, the written cooperation agreement *says nothing* about any communications made by the DA *prior to Morrissey's testimony*. Whatever the Bronx DA was required to do *after* trial, nothing in the agreement disclosed that it would make phone calls on Morrissey's behalf *prior* to his testimony. All of the Bronx DA's assistance to Morrissey in this regard was expressly conditioned on Morrissey's testimony having already occurred. As a result, defense counsel would have had no way of knowing that the Bronx DA made *pre*-trial calls on Morrissey's behalf to Queens County, and was thus denied the opportunity to cross Morrissey on this basis. The R&R is entirely correct in so finding.

Pursuing the same "implied disclosure" theme, the Bronx DA also repeats the argument that (1) it had promised Morrissey he would receive a Willard sentence in all jurisdictions where he faced charges, and disclosed that promise in the written cooperation agreement; (2) if Morrissey did not receive a Willard sentence in Queens County, its disclosed promise would become "illusory"; and (3) thus, its pre-trial calls to Queens County were necessary (and therefore impliedly disclosed) under the written agreement. Resp. Obj. at 9–10. As Judge Cott correctly found, not one of the links in this logical chain holds up under scrutiny.

The written cooperation agreement said that the Bronx DA would "recommend that [Morrissey] receive a lesser sentence of 2-4 years incarceration, or the Willard Program." A-113. Astonishingly, Respondent reads—and expects the Court to read—that promise as "recommend[ing] that [Morrissey] receive the Willard Program." To put it mildly, excising

7

entire clauses from an agreement is frowned upon as a matter of contract interpretation.[3] And no "reasonable mind" could read the agreement as Respondent does. Thus, as Petitioner has argued and as the R&R concludes, the Bronx DA was never at risk of rendering "illusory" the promises disclosed in the written cooperation agreement were it not to call Queens County on Morrissey's behalf prior to Petitioner's trial. R&R at 35. Rather, those calls represented *additional*, undisclosed benefits that should have been disclosed under *Brady*.

The undisclosed evidence was undoubtedly favorable, as Judge Cott correctly found, because Petitioner could have used it to impeach Morrissey, the DA's star witness. R&R at 34–37. Respondent repeats its argument before Judge Cott that the calls to Queens were merely "logistical" in nature. Resp. Obj. at 10–11. But ADA Kaplan himself described the calls as "*substantive*." R&R at 35 (emphasis added). And, as Petitioner has repeatedly argued, Morrissey *expressly* requested that the Bronx DA make these calls to "ensure" that he would receive his favored Willard sentence (which was, again, never a guarantee). Opening Br. at 36–37. That the DA acceded to Morrissey's request is, alone, enough to render the calls and emails impeachment material.

Finally, for this claim, too, Respondent argues that AEDPA deference should apply. As Petitioner explained in his objections, there is no reason to defer to the state court's unreasonable determination of fact as to whether these benefits were disclosed, and Judge Cott correctly declined to do so. Dkt. 33 at 9. The written agreement clearly did not disclose the existence of

---

[3] Of course, Respondent—only sentences after making this bizarre argument—cites emails from ADA Kaplan in which he stated that "the cooperation agreement 'does not say [Morrissey will] get Willard, per se (it's an "or"),' rendering it merely a possibility." Resp. Obj. at 10. Respondent cannot maintain a consistent argument about how it interprets the agreement for even one paragraph.

8

any substantive pre-trial calls to other jurisdictions on Morrissey's behalf. Because the state court was unable to recognize this simple fact, AEDPA deference no longer applies.

Respondent's objections should be rejected as to Petitioner's *Brady* claim.

## IV. CONCLUSION

The Court should reject Respondent's arguments and adopt the specific conclusions in the R&R objected to by Respondent.

Dated: August 14, 2020                          By: /s/ Evan H. Stein

Evan H. Stein (ES-2139)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
estein@hsgllp.com


Christina Swarns
Anastasia B. Heeger (AH-9640)
OFFICE OF THE APPELLATE DEFENDER
11 Park Place, Suite 1601
New York, NY 10007
(212) 402-4100

*Attorneys for Petitioner*